UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Case No. 23-cr-107(1) (MJD/DJF)
Case No. 23-cr-265(5) (MJD/DJF)

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) GOVERNMENT'S POSITION ON ) SENTENCING ) |
| ISSAC ONEAL MAIDEN, | ) ) |
| Defendant. | ) |

COMES NOW the United States of America, by and through its undersigned attorneys, Joseph H. Thompson, Acting United States Attorney for the District of Minnesota, and Thomas M. Hollenhorst, Assistant United States Attorney, and submits the following position on sentencing concerning the defendant, Issac Oneal Maiden. The government asks the Court to impose a sentence that includes a very lengthy period of confinement.

Procedural History

On March 21, 2023, the defendant was charged in an indictment with being a felon in possession of a firearm (Count 1) in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(8), possession with the intent to distribute fentanyl (Count 2) in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and carrying a firearm during and in relation to a drug-trafficking crime (Count 3) in violation of 18 U.S.C. § 924(c)(1)(A). *See* Case No. 23-cr-107 (Doc. 1). On August 30, 2023, the defendant was charged in a second indictment with conspiracy to distribute 400 grams or more of fentanyl (Count 1)

in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, and with three counts of possession with the intent to distribute 400 grams or more of fentanyl (Counts 8, 9, and 10) in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A). *See* Case No. 23-cr-265 (Doc. 1). On May 6, 2025, the defendant pleaded guilty to Count 2 of the first indictment and to Count 8 of the second indictment pursuant to the terms of a written plea agreement ("PA"). Case No. 23-cr-107 (Doc. 74-75); Case No. 23-cr-265 (Doc. 375-76).

The Nature and Circumstances of the Offense

In his plea agreement, the defendant admitted that on August 2, 2022, a Minnesota State Trooper saw him driving recklessly on Interstate 94 in Saint Paul, Minnesota, and tried to stop him. PA ¶ 2.b.; Presentence Investigation Report ("PSR") ¶ 8. A high-speed pursuit ensued in which the defendant cut back and forth over several lanes of traffic weaving in and out of heavy traffic. *Id.* The Trooper discontinued the pursuit for safety reasons but later spotted the defendant backing into a residential driveway on Maryland Avenue in Saint Paul. *Id.* The defendant got out of the vehicle and fled on foot after the Trooper told him to stop. PA ¶ 2.b.; PSR ¶ 9. The defendant was eventually arrested at gunpoint by another officer. *Id.* During a search of the defendant's person, the police seized approximately 10 grams of cocaine, 153 fentanyl pills (weighing approximately 16 grams), and $10,280 in cash. *Id.* In a subsequent search of his vehicle, the police seized a loaded Glock, model 19, 9-millimeter pistol, serial number AELK566. *Id.* The firearm, as depicted below, had one round in the chamber, had a 30-round high-capacity magazine inserted (which contained 20 rounds of ammunition), and was equipped with a machinegun conversion device, commonly known as a "switch" or "auto sear." *Id.*

2

 

The defendant also agreed in his plea agreement that on or about March 14, 2023, in Phoenix, Arizona, he mailed two packages to Minnesota, which contained approximately 9,289 grams of fentanyl (approximately 85,000 pills), which he intended to distribute to others in Minnesota. PA ¶ 2.a.; PSR ¶ 25. The defendant's misconduct on August 2, 2022, and again on March 14, 2023, were just two of multiple overt acts of a conspiracy in which the defendant supplied hundreds of thousands of fentanyl pills in a broad-based drug trafficking organization involving numerous drug traffickers in the State of Minnesota and elsewhere. *See* PSR ¶¶ 11-33.

### The Criminal History of the Defendant

In addition to an extensive juvenile record, the defendant has adult convictions for terroristic threats (defendant threatened a juvenile with rape unless the victim performed oral sex on him), theft (defendant stole multiple items of clothing from a department store), disorderly conduct, aiding and abetting a crime for the benefit of a gang (defendant participated in a gang shooting where a victim suffered a gunshot wound to his arm),

3

possession of marijuana in a motor vehicle, and numerous vehicle-related offenses. PSR ¶¶ 54-72. The defendant has numerous other arrests to include first-degree assault and robbery charges (and related gang offenses) stemming from an incident in 2013. PSR ¶ 74. In that case, the defendant was charged with having participated in a "gang attack" in which a victim was found unconscious with his pants off and with blood coming from his mouth and nose. *Id.* The victim survived but suffered permanent and protracted loss of brain function. *Id.* The defendant was acquitted of these charges. *Id.* The defendant also has prior arrests for possessing a handgun and fleeing from a peace officer. PSR ¶¶ 75-76. He is currently pending charges for numerous vehicle-related offenses. PSR ¶¶ 80-87. Finally, the defendant has been a significant problem while a prisoner at the Sherburne County Jail. He has committed no less than 22 disciplinary acts and received 18 verbal warnings for a litany of misconduct including failing to comply with prison rules, threatening bodily harm, destroying property, inciting or participating in mutinous acts, harassment, and assault. PSR ¶ 88. The defendant has a total of eight criminal history points, which places him in criminal history category IV. PSR ¶ 73.

Guideline Range

The parties agree that the defendant has a base offense level of 36, increased by two levels for possession of a dangerous weapon, increased by two levels for reckless endangerment during flight, and reduced by three levels for acceptance of responsibility. PSR ¶¶ 39-48. This results in a total offense level of 37 and, with a criminal history category of IV, a guideline range of 292 to 365 months. PSR ¶¶ 49, 115. The defendant is also subject to a 10-year mandatory minimum sentence. PSR ¶ 114.

## The History and Characteristics of the Defendant

The defendant was born in Chicago, Illinois, and is 31 years old. PSR ¶ 90. His parents were never married. *Id.* The defendant spent the first 16 years of his life living with his maternal grandparents in Chicago. *Id.* That did not go well, so the defendant and his mother moved to Saint Paul, Minnesota. *Id.* The defendant resided in both Arizona and Minnesota at the time of his arrest. *Id.* The defendant's parents were addicted to drugs and his grandfather was a strict disciplinarian who often beat him with his hands, belts, extension cords, and pieces of wood. PSR ¶ 91. The defendant reported "food insecurity" and the lack of clean clothes during the time he spent with his grandparents. *Id.* The defendant has seven siblings (ages 30 to 45). PSR ¶ 93. The defendant grew up in a "dangerous and territorial" neighborhood. He reported that he was the victim of violence and sexual assaults on numerous occasions. *Id.* The defendant is single and the father of two children (ages 3 and 5). He has several physical health issues and a long history of substance abuse. *See* PSR ¶¶ 99, 104-05. It appears he graduated from high school in 2012. PSR ¶ 107. The defendant has a spotty employment record and does not appear to have the ability to pay a criminal fine. PSR ¶¶ 110-13.

## The Needs of Sentencing

This case is aggravated by the serious nature of the charges, the defendant's violent past, his possession of a firearm in connection with drug trafficking, his reckless flight from the police in a motor vehicle that created a great risk of harm to the general public, his history of gang membership, and his decision to continue dealing huge quantities of fentanyl even after his arrest on August 2, 2022. The case is mitigated by the defendant's

difficult childhood, physical health problems, substance abuse history, and plea of guilty. Considering these and the other § 3553(a) factors, the government asks the Court to impose a very lengthy period of confinement. Such a sentence would serve the needs of sentencing to reflect the seriousness of the offenses, to promote respect for the law, to provide just punishment, to afford adequate deterrence, to protect the public from further crimes of the defendant, and to avoid unwarranted sentencing disparities among defendants.

WHEREFORE, the government asks this Honorable Court to impose a sentence that includes a very lengthy period of confinement.

Dated: October 2, 2025　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　JOSEPH H. THOMPSON
　　　　　　　　　　　　　　　　　　　　Acting United States Attorney

　　　　　　　　　　　　　　　　　　　　s/ *Thomas M. Hollenhorst*

　　　　　　　　　　　　　　　　　　　　BY: THOMAS M. HOLLENHORST
　　　　　　　　　　　　　　　　　　　　Assistant United States Attorney
　　　　　　　　　　　　　　　　　　　　Attorney ID No. 46322